UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
DR. GERALD FINKEL, as Chairman of the Joint            :
Industry Board of the Electrical Industry,             :
                                                       :
                              Plaintiff,               :            Civil Action No.
                                                       :
             - against -                               :
                                                       :
WG COMMUNICATIONS INC., C & I                          :            **COMPLAINT**
ASSOCIATES, INC., and WILLIAM GIANNINI,                :
                                                       :
                              Defendants.              :
------------------------------------------------------------------ x

Plaintiff Dr. Gerald Finkel, as Chairman of the Joint Industry Board of the

Electrical Industry (the "Joint Board"), for his complaint alleges as follows:

## INTRODUCTION

1.      This is an action brought under the Employee Retirement Income Security

Act ("ERISA") and the Labor Management Relations Act ("LMRA").

2.      This action arises from the failure of defendants WG Communications Inc.

("WG Communications") and C & I Associates, Inc. ("C&I") to (a) submit all books and records

necessary to conduct payroll audits of WG Communications and C&I for the period commencing

January 1, 2011, (b) remit contributions due pursuant to the applicable collective bargaining and

trust agreements, and (c) remit various other sums due to the Joint Board in accordance with the

terms of a series of collective bargaining agreements pursuant to Section 301 of the Labor

Management Relations Act ("LMRA"), 29 U.S.C. §185.  The Joint Board also seeks injunctive

and monetary relief pursuant to Sections 404, 409, 502 and 515 of the Employee Retirement

Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§1104, 1109, 1132 and 1145.

(WG Communications and C&I, collectively and individually, are the "Defendant Companies").

3.     The Joint Board further seeks to hold the Defendant Companies jointly and severally liable for the relief sought hereunder based on their single employer, alter-ego, and joint employer relationship.

4.     The Joint Board further seeks to hold defendant William Giannini ("Giannini") jointly and severally liable with the Defendant Companies for the relief sought hereunder because Giannini knowingly used his control over the Defendant Companies, collectively and individually, in an ongoing scheme to defraud the Joint Board of contributions due.  (Giannini, with the Defendant Companies, collectively and individually, are the "Defendants").

## JURISDICTION AND VENUE

5.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, Sections 502(a)(2) and (3), 502(f) and 515 of ERISA, 29 U.S.C. §§1132(a)(2) and (3), 1132(f) and 1145, and Section 301(a) of the LMRA, 29 U.S.C. §185(a).  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

6.     Venue lies in this district under Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and Section 301(a) of the LMRA, 29 U.S.C. §185(a), as the Joint Board maintains its principal office in this district and the various employee benefit plans are administered and maintain their principal offices in this district.

## THE PARTIES

7.     The plaintiff is the Chairman of the Joint Board, the administrator of various employee benefit plans established and maintained pursuant to collective bargaining agreements between Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO (the "Union"), and employer associations and independent or unaffiliated employers in the electrical, elevator, sign, television, burglar alarm and other related industries.  The Joint

Board maintains its principal place of business at 158-11 Harry Van Arsdale Jr. Avenue, Flushing, New York 11365.

8.      The Joint Board is the administrator and fiduciary within the meaning of Sections 3(16)(A)(i) and 3(21)(A) of ERISA, 29 U.S.C. §§1002(16)(A)(i) and 1002(21)(A), of each of the following employee benefit plans, among other plans: the Pension, Hospitalization and Benefit Plan of the Electrical Industry, the Dental Benefit Fund of the Electrical Industry, the Deferred Salary Plan of the Electrical Industry, the Educational and Cultural Trust Fund of the Electrical Industry, and the Annuity Plan of the Electrical Industry, and also collects contributions required to be paid to the National Employees Benefit Fund (collectively, the "ERISA Plans"). Each of the ERISA Plans is an employee benefit plan within the meaning of Section 3(3) of ERISA, 29 U.S.C. §1002(3), and a multiemployer plan within the meaning of Section 3(37) of ERISA, 29 U.S.C. §1002(37). Each of the ERISA Plans is also jointly administered by a Board of Trustees, comprised of labor and management representatives who share equal representation in the administration of the Plans in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. §186(c)(5). The contributions to the ERISA Plans are referred to, collectively and individually, as the "JIB Contributions."

9.      The Deferred Salary Plan of the Electrical Industry (the "DSP") is a tax-qualified profit-sharing plan with a cash or deferred arrangement within the meaning of section 401(k) of the Internal Revenue Code (the "Code"). Pursuant to the collective bargaining agreements, employers are required to deduct a specified percentage from the weekly wages of each eligible employee covered by the collective bargaining agreement and to remit such amounts plus additional salary deferrals made at the election of the employee (together, "Employee Contributions"), to the DSP, along with related payroll reports. The Employee

Contributions are employee elective contributions, which, but for the salary deferrals, would have been paid to the employees as wages.  Employers are also required to remit employer contributions to the DSP on behalf of all covered employees ("Employer Contributions"), in addition to the Employee Contributions and without regard to any election by the employees. The Employee Contributions and the Employer Contributions to the DSP are collectively referred to hereafter as "DSP Contributions."  The DSP Contributions, with the JIB Contributions, are the "Required Contributions."

10.     Employers are required to send all DSP Contributions and related payroll data to the DSP in care of Mercer Trust Company ("Mercer"), the third-party record-keeper and investment manager retained by the DSP for such purposes.  All DSP Contributions are allocated to individual bookkeeping accounts in the name of the covered employees, who are entitled to direct the investment of their DSP Contributions from among various investment alternatives selected by the Trustees of the DSP.

11.     The Joint Board is the Administrator of all of the ERISA Plans.  Under the collective bargaining agreements, signatory employers, including the Defendant Companies, are required to remit the Required Contributions, as well as summaries of their payroll records.

12.     The Joint Board and each of the Plans are third-party beneficiaries of the collective bargaining agreements.

13.     Upon information and belief, WG Communications is, and at times relevant to this action has been, a New York corporation with its principal facility located at 767 East 133rd Street, Bronx, New York 10454.

14.     Upon information and belief, at all times relevant to this action, WG Communications was and is engaged in the electrical contracting business including the wiring of cable and telephone systems within the metropolitan New York area.

15.     WG Communications is, and at all times relevant to this action, has been, an "employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5) and Section 301(a) of the LMRA, 29 U.S.C. §185(a).

16.     Giannini is the principal of WG Communications and, by acting directly or indirectly in the interest of an employer constituting an "employer" as defined by Section 3(5) of ERISA, 29 U.S.C. §1002(5) and Section 301(a) of the LMRA, 29 U.S.C. §185(a), is personally liable for unpaid contributions.

17.     Upon information and belief, C&I is, and at times relevant to this action has been, a New York corporation with its principal facility located at 767 East 133rd Street, Bronx, New York 10454.

18.     Upon information and belief, at all times relevant to this action, C&I was and is engaged in the electrical contracting business including the wiring of cable and telephone systems within the metropolitan New York area.

19.     C&I is, and at all times relevant to this action, has been, an "employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5) and Section 301(a) of the LMRA, 29 U.S.C. §185(a).

20.     Giannini is the principal of C&I and, by acting directly or indirectly in the interest of an employer constituting an "employer" as defined by Section 3(5) of ERISA, 29 U.S.C. §1002(5) and Section 301(a) of the LMRA, 29 U.S.C. §185(a), is personally liable for unpaid contributions.

## FACTUAL BASIS FOR CLAIMS

**The Collective Bargaining Agreements**

21.     C&I and the Union agreed to the terms of a collective bargaining agreement for the period of April 1, 2003 through March 31, 2007, which was extended by a memorandum of agreement entered into between C&I and the Union, effective April 1, 2007 through March 31, 2011 (the memorandum of agreement, together with the collective bargaining agreement, referred to as the "C&I CBA").

22.     Charles Iannazzo signed the C&I CBA on behalf of C&I.

23.     By Memorandum of Agreement dated July 1, 2011, between the Union and WG Communications (the "MOA"), WG Communications affirmed that it was "Formerly C&I Associates" and agreed that the C&I CBA shall continue to be in effect through May 5, 2013.

24.     Accordingly, WG Communications is bound to the C&I CBA.

25.     Giannini signed the MOA on behalf of WG Communications.

26.     WG Communications and the Union subsequently agreed to the terms of a collective bargaining agreement for the May 6, 2013 through May 5, 2016 ("the WG 2016 CBA," with the MOA, are the "WG Communications CBAs."  The WG Communications CBAs and the C&I CBA are the "CBAs.")

27.     Giannini signed the WG 2016 CBA on behalf of WG Communications.

The Obligation to Remit Contributions

28.     Pursuant to the CBAs, the Defendant Companies are obligated to remit the Required Contributions at the rates set forth in the CBAs for any employee performing work covered by the CBAs.

29.     Along with the weekly JIB Contributions, the Defendant Companies are required to submit payroll reports ("Payroll Reports") to the Joint Board that provide the name, gross wages, and hours worked for each worker employed by the Defendant Company on whose behalf JIB Contributions are made.

30.     Along with the weekly DSP Contributions, the Defendant Companies are required to submit reports to Mercer that set forth the amounts of Employee Contributions and Employer Contributions and loan repayments being deducted from employee wages and remitted to Mercer.  These reports are referred to as hereafter the "DSP Reports."

31.     Each week ends on a Wednesday, and the Payroll Reports, DSP Reports, and Required Contributions are due the following Tuesday.

32.     The CBAs and the Trust Agreements establishing each of the Plans are agreements between the Union and various employers and employer associations within the meaning of Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§1132(a)(3) and 1145, and within the meaning of Section 301(a) of the LMRA, 29 U.S.C. §185(a).  In addition, the CBAs and the Trust Agreements of the ERISA Plans are plan documents within the meaning of Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§1132(a)(3) and 1145.

33.     As Administrator of the ERISA Plans, the Joint Board has adopted a delinquent contribution policy calling for the assessment of interest on late-paid contributions due and owing to the ERISA Plans, at the rate established by the ERISA Plans or in accordance with Section 6621 of the Code, 26 U.S.C. §6621.

34.     The Joint Board has also adopted a delinquent contribution policy calling for the assessment of interest on late-paid Non-ERISA Contributions, at the rate established by the Non-ERISA Plans or in accordance with Section 6621 of the Code, 26 U.S.C. §6621.

The Obligation to Permit Payroll Audits

      35.    Article V, Section 5.4(A) of the Trust Agreement of the Pension,

Hospitalization and Benefits Fund of the Electrical Industry (the "Trust Agreement") provides:

"Each Employer, as a condition of coverage under the Plans for Employees employed by each

Employer, shall maintain such time records, checks, check stubs, quarterly or other pertinent

government returns, or such other records relating to employment for which contributions are

payable hereunder, sufficient (1) to determine whether it has satisfied all obligations to the Trust

and (2) to permit the Trust to comply with all applicable laws. These records shall be maintained

for a period of not less than seven years following the end of the calendar year in which the

employment occurs. If an Employer fails to keep records adequate to determine its obligations,

there shall be a rebuttable presumption, at the option of the Committee, that all sums paid to

participants by such Employer were wages for which contributions were payable to the Trust."

      36.    Article V, Section 5.4 (B) of the Trust Agreement provides, in relevant

part: "Upon notice in writing, an Employer must permit an authorized Committee or Plan

Administrator representative to enter upon the premises of such Employer at a mutually

agreeable time during regular business hours to examine and copy such records as may be

necessary to determine whether the Employer is making full and prompt payment of all sums

required to the Trust or whether a third party source of such payments exists.  Such examination

may be undertaken pursuant to a routine payroll audit program or on an individual basis.  The

records to be made available to the Committee or Plan Administrator, or its representative, shall

include, but not be limited to, timecards, payroll journals, payroll check registers, canceled

payroll checks, copies of the Employer's federal, state and local payroll tax reports, all other

documents reflecting the hours and wages of Employees doing work on jobs covered by

performance or surety bonds or third party guarantees which provide for the payment of Employee benefit plan contributions.  In the event that an examination of the Employer's records reveals that full and prompt payment of all sums due is not being made, then such Employer shall reimburse the Trust, upon demand by the Plan Administrator, for the costs of said examination in addition to any other obligations it may have hereunder."

37.     Article V, Section 5.05 (A) of the Trust Agreement provides: "Whenever an Employer delays sending any reporting form and/or contribution to the Fund the Employer shall be deemed a delinquent contributor.  There shall be assessed upon every delinquent contributor an interest penalty for every week during which contributions remain delinquent. Payment of said interest penalty shall be part of the Employer's obligation to contribute to the Fund and failure to pay said interest penalty shall be treated as a delinquency under this section.

38.     Article V, Section 5.05 (B) of the Trust Agreement provides: "Whenever an Employer becomes a delinquent contributor, the Plan Administrator and Fund Counsel are hereby authorized and directed to commence collection proceedings against the Employer."

**The Relationship between the Defendant Companies**

*Commonality of Ownership and Control*

39.     In signing the MOA, Giannini acknowledged that WG Communications was formerly known as C&I.

40.     Upon information and belief, WG Communications performs subcontracted work contracted to it by various cable companies, often providing cable installation and repair services at customer residences.

41.     Upon information and belief, C&I performs subcontracted work contracted to it by various cable companies, often providing cable installation and repair services at customer residences.

9

42.     Upon information and belief, for all times material to this action, Giannini has been the principal of WG Communications.

43.     Upon information and belief, on or about July 1, 2008, Giannini and Joseph Spain purchased 100% of the shares of the stock of C&I from Charles Iannazzo.

44.     Upon information and belief, as a result of the July 1, 2008 transaction, Giannini and Joseph Spain each then held 50% of the shares of the stock of C&I.

45.     Upon information and belief, as a result of the July 1, 2008 transaction, Giannini became president of C&I.

46.     Upon information and belief, on or about June 2012, Joseph Spain sold his 50% of the shares of the stock of C&I back to C&I.

47.     Upon information and belief, as a result of the June 2012 transaction, Giannini now holds 100% of the ownership shares in C&I.

48.     Giannini presently is the listed with the New York Secretary of State Division of Corporations as the chief executive officer and registered agent for service of process of C&I.

49.     Upon information and belief, Giannini manages the business affairs of C&I.

50.     Upon information and belief, Giannini manages the business affairs of WG Communications.

51.     Giannini bound WG Communications to the terms of the CBAs.

52.     Upon information and belief, Giannini controls the Defendant Companies' labor relations.

*The Defendant Companies' Use the Same Business Office*

53.    Upon information and belief, WG Communications operates out of 767 East 133rd Street, Bronx, New York 10454.

54.    Upon information and belief, C&I operates out of 767 East 133rd Street, Bronx, New York 10454.

55.    WG Communications' registered address for service of process with the New York State Department of State Division of Corporations is 767 East 133rd Street, Bronx, New York 10454.

56.    C&I's registered address for service of process with the New York State Department of State Division of Corporations is 767 East 133rd Street, Bronx, New York 10454.

57.    Upon information and belief, the Defendant Companies share common facilities.

58.    Upon information and belief, despite claiming that the 767 East 133rd Street, Bronx, New York 10454 business address is WG Communications' office, employees of WG Communications answer the telephone at times by stating "C&I Associates."

*The Defendant Companies Park Their Trucks in the Same Lot*

59.    Upon information and belief, at times relevant to this complaint, including in 2015, trucks with WG Communications' name written on their body have been parked in the lot behind the 767 East 133rd Street, Bronx, New York 10454 business office.

60.    Upon information and belief, at times relevant to this complaint, including in 2015, trucks with C&I's name written on their body have been parked in the lot behind the 767 East 133rd Street, Bronx, New York 10454 business office.

61.    Prior to 2015, C&I represented to the Joint Board that it was out of business.

62.     Upon information and belief, at times relevant to this complaint, including in 2015, unmarked trucks have been parked in the lot behind the 767 East 133rd Street, Bronx, New York 10454 business office.

63.     Upon information and belief, the Defendant Companies share common equipment.

*The Defendant Companies Have Common Employees*

64.     Upon information and belief, the Defendant Companies have common managers.

65.     Upon information and belief, the Defendant Companies have common office staff.

66.     Upon information and belief, the Defendant Companies have common employees, who at times relevant to the complaint performed work covered by the CBAs for both Defendant Companies.

**The Defendant Companies' Cooperative
Scheme to Avoid Remitting Required Contributions**

*The Subcontractor Companies*

67.     The CBAs each provide:

> The Employer further agrees that he will not sublet, assign or transfer any work covered by this Agreement to any person, firm or corporation if such subletting, assigning or transfer will cause the loss of work opportunities to employees in the Employer's establishment covered by this Agreement.  Any such subletting, assigning to transfer shall be allowable after a mutual determination has been made by the representatives of the parties hereto that such action is not in conflict with the preceding sentence.

68.     Upon information and belief, at times relevant to this complaint, the Defendant Companies did not comply with the terms of the CBAs relating to subcontracted work.

69.     Upon information and belief, several individuals performing work covered by the CBAs for the Defendant Companies purported to own and operate their respective companies.  These companies are hereinafter referred to as the "Subcontractor Companies."

70.     Upon information and belief, a Subcontractor Company often consists of one employee: the Subcontractor Company's principal.

71.     Upon information and belief, the Defendant Companies retained the Subcontractor Companies to perform work covered by the CBAs, with the Subcontractor Company's owner performing the driving and installation work.

72.     Upon information and belief, the Defendant Companies compensated the Subcontractor Companies for work performed by issuing payments directly to the employee of the Subcontractor Company who also was the Subcontractor Company's principal, and at times by issuing payment directly to the Subcontractor Company.

73.     Upon information and belief, employees of the Defendant Companies and/or the Subcontractor Companies were at times relevant to this complaint compensated for work performed for WG Communications with two payroll checks, often with one check cut by WG Communications and one check cut by C&I.

74.     Upon information and belief, since January 1, 2011, the Defendant Companies have paid over $2.8 million to Subcontractor Companies.

75.     Upon information and belief, payments to Subcontractor Companies, instead of the employees performing the work, were intended in part to avoid remitting Required Contributions to the Joint Board.

76.     Upon information and belief, the Defendant Companies did not remit corresponding Required Contributions due for payments made directly to the Subcontractor Companies.

*The Defendant Companies' Payments to Their Employees*

77.     Upon information and belief, the Defendant Companies did not remit corresponding Required Contributions due for payments made directly to the Defendant Companies' employees.

78.     The CBAs each provide that the regular workweek shall consist of forty (40) hours worked (5) consecutive days, Monday through Saturday.

79.     Upon information and belief, at times relevant to this complaint, the Defendant Companies paid certain employees wages for (35) hours, instead of the forty (40) hours required by the CBAs.

80.     As a result of this payment practice, certain Required Contributions due to the Joint Board were not remitted by the Defendant Companies.

81.     The C&I CBA provides that wages for overtime and work performed on Sunday shall be paid at double time.

82.     The WG 2016 CBA provides that wages for overtime and work performed on Sunday shall be paid at double time.

83.     Upon information and belief, at times relevant to this complaint, the Defendant Companies failed to pay wages for all overtime worked.

84.     As a result of this payment practice, certain Required Contributions due to the Joint Board were not remitted by the Defendant Companies in accord with the terms of the CBAs.

85.     The WG 2016 CBA provides:

> The company will continue to contribute $5.00 per day to the Annuity Plan/ASBF for all union employees employed more than one (1) year.

86.     Upon information and belief, at times relevant to this complaint, the Defendant Companies failed to remit contributions to the Annuity Plan for all union employees employed more than one (1) year.

87.     The CBAs each provide that with respect to the DSP:

> All employees of the bargaining unit must participate, by agreement, in the 401K plan of the Joint Industry Board.  To be eligible for this plan, the employee must complete and sign a withholding authorization form.

88.     Upon information and belief, at times relevant to this complaint, all employees of the Defendant Companies did not participate in the DSP.

89.     Upon information and belief, at times relevant to this complaint, the Defendant Companies did not provide their employees with the required information and withholding authorization form necessary for their participation in the DSP.

90.     Upon information and belief, presently only 2 out of 100 WG Communications employees participate in the DSP.

91.     Upon information and belief, since January 1, 2011, the Defendant Companies have paid their employees over $1.7 million in "car allowances."

92.     The CBAs do not provide for "car allowances."

93.     Upon information and belief, payment of "car allowances" by the Defendant Companies was intended, in part, to avoid remitting Required Contributions to the Joint Board.

94.     Upon information and belief, at times relevant to this complaint, the Defendant Companies filled out paperwork falsely indicating that some of the moneys paid covers fixing the Subcontractor Companies' trucks, instead of as compensation for work performed that is covered by the CBAs.

95.     Upon information and belief, these payments were intended in part to avoid remitting Required Contributions for work performed that is covered by the CBAs.

96.     Upon information and belief, since January 1, 2011, the Defendant Companies have made unexplained payments to various related companies, including CVI Consulting Inc. and WG Construction.

97.     Upon information and belief, WG Construction is an unincorporated entity owned and controlled by William Giannini.

98.     Upon information and belief, these payments were intended in part to avoid remitting Required Contributions for work performed that is covered by the CBAs.

Giannini's Role

99.     Upon information and belief, Giannini is, and at all times relevant to this action has been, a controlling corporate official of WG Communications.

100.     Upon information and belief, Giannini is, and at all times relevant to this action has been, a controlling corporate official of C&I.

101.     Upon information and belief, Giannini is responsible for the daily operations of WG Communications.

102.    Upon information and belief, Giannini is responsible for the daily operations of C&I.

103.    Upon information and belief, having negotiated the terms of and signed the MOA and WG 2016 CBA, Giannini is aware of the Required Contribution requirements as specified in the CBAs.

104.    Upon information and belief, Giannini oversees and/or directs the payment or non-payment of contributions to the Joint Board by the Defendant Companies.

105.    Upon information and belief, Giannini is directly involved in the arrangement described above between the Defendant Companies to defraud the Joint Board and to knowingly underreport and underpay contributions to the Joint Board.

**The Failure to Permit Complete Payroll Audits**
**of the Defendant Companies' Books and Records**

106.    WG Communications agreed to cooperate in a payroll audit of its books and records for the period commencing January 1, 2011.

107.    As part of the payroll audit, the Joint Board's auditors requested books and records necessary for the conduct of the payroll audit.

108.    During the conduct of the WG Communications payroll audit, the Joint Board's auditors uncovered evidence that despite representations to the contrary, C&I continues to operate, and consequently asked for access to its books and records as well.

109.    WG Communications failed to provide all books and records requested for the Defendant Companies' payroll audits' conduct.

110.    By letter dated September 10, 2015, the Joint Board's auditors requested that the following documents be produced within thirty (30) days for the purposes of the payroll audits' conduct:

(a)     The full weekly payroll, cash disbursements listings, W-2's, NYS 45 ATT, and 1099's for C&I for the period commencing January 1, 2011;

(b)     The full weekly payroll, cash disbursements listings, W-2's, NYS 45 ATT, and 1099's for WG Construction for the period commencing January 1, 2011;

(c)     Copies of all invoices and the cancelled checks (front and back) for CVI Consulting Inc. for the period commencing April 1, 2012;

(d)     Copies of all invoices and the cancelled checks (front and back) for payments classified in WG Communications' general ledger as "Sub-Contractors" for the period commencing April 1, 2012, with the auditors attaching a list of 43 such companies; and

(e)      The cash disbursements listing for WG Communications for the period commencing January 1, 2015.

111.    Despite this request, the Defendant Companies have failed to provide the books and records necessary for the Defendant Companies' payroll audits' conduct, pay amounts which would be due as a result of such audit, and/or pay amounts due pursuant to the CBAs and Trust Agreement.

## The Defendant Companies' Failure to Remit Required Contributions

### *Unpaid Contributions*

112.    Upon information and belief, for all relevant periods, including for the period of weeks commencing week ending January 1, 2011, the Defendant Companies employed employees who performed work covered by the CBAs.

113.    WG Communications submitted Payroll Reports to the Joint Board that reflect the amount of JIB Contributions due for the period of weeks ending July 22, 2015 through October 14, 2015.  To date, the Defendants have failed to pay the JIB Contributions on behalf of said employees.

114.    WG Communications has failed to submit Payroll Reports or remit corresponding Required Contributions for the period of weeks commencing week ending October 21, 2015.

115.    Upon and information and belief, the requested payroll audit for the period commencing January 1, 2011 will reflect Required Contributions in addition to those reported by WG Communications are due by the Defendants, as the preliminary analysis of the limited records submitted by WG Communications already reflect an approximate $205,000 JIB Contribution delinquency.

116.    C&I has failed to submit Payroll Reports or remit corresponding Required Contributions for the period of weeks commencing week ending April 27, 2011.

117.    WG Communications submitted DSP Reports to Mercer for the period of weeks ending October 7, 2015 through October 14, 2015. To date, the Defendants have failed to pay the DSP Contributions on behalf of said employees.

118.    The Joint Board is unable to determine the exact amount of required DSP Contributions owed by the Defendants for the weeks commencing with week ending January 1, 2011, because the Defendant Companies have not provided their employees with the information necessary to enroll in the DSP and have not submitted all required payroll related data to Mercer for said weeks.

*Other Amounts*

119.    On information and belief, additional amounts will continue to become due and owing by the Defendants during the pendency of this action.

120.    The Defendants remain obligated to pay the Required Contributions to all Plans due under the CBAs and any successor collective bargaining agreement to which they become parties to that will accrue between the date this Complaint is filed and the date judgment

is entered as well as any Required Contributions deemed due pursuant to the requested payroll audits.

## FIRST CAUSE OF ACTION

121.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs.

122.   Section 515 of ERISA, 29 U.S.C. §1145, requires that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall to the extent not inconsistent with law make such contributions in accordance with the terms and conditions of such plan or such agreement."

123.   Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), mandates that

> In any action brought by a fiduciary on behalf of a plan to enforce Section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan,
> (a)   the unpaid contributions,
> (b)   interest on the unpaid contributions,
> (c)   an amount equal to the greater of
>        (i)   the interest on the unpaid contributions or;
>        (ii)  liquidated damages provided for under the plan in an amount not in excess of 20 percent of the [unpaid contributions],
> (d)   reasonable attorney's fees and costs of the action, and
> (e)   such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under Section 6621 of title 26.

124.   The Defendant Companies, by virtue of their failure to submit their books and records to payroll audits, are each subject to an injunction ordering them, jointly and severally, to submit immediately to such audits and are each required to pay the contributions due according to such audits, interest, liquidated damages, audit fees, attorneys' fees, and costs.

125.    The Defendants' failure to remit contributions to the Joint Board for hours worked by individuals performing covered work constitutes a failure to make contributions in accordance with the terms of the plan documents of the Joint Board in violation of Sections 502 and 515 of ERISA, 29 U.S.C. §§1132 and 1145, giving rise to an action under Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3).

## SECOND CAUSE OF ACTION

126.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs.

127.    By failing to deduct and pay DSP, the Defendants were able to pay less in compensation to their employees through their scheme and in doing so did not timely remit the Employee Contributions to the DSP and allowed those DSP assets to be retained in, and commingled with, the Defendant Companies' general assets, the Defendants: (a) violated their fiduciary duty to ensure that plan assets of the DSP were held in trust by one or more trustees pursuant to the provisions of Section 403(a) of ERISA, 29 U.S.C. §1103(a); and (b) permitted plan assets of the DSP to inure to the Defendant Companies' benefit, in violation of Section 403(c)(1) of ERISA, 29 U.S.C. §1103(c)(1).

128.    As a direct and proximate result of the Defendant Companies' actions or omissions, the DSP has suffered losses for which the Defendants are jointly and severally liable, pursuant to Section 409 of ERISA, 29 U.S.C. §1109.

## THIRD CAUSE OF ACTION

129.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs.

130.    By failing to deduct and pay  DSP Contributions, the Defendants were able to pay less in compensation to their employees through their scheme and in doing so did not

timely remit the Employee Contributions to the DSP and allowed those DSP assets to be retained in, and commingled with, the Defendant Companies' general assets, the Defendants: (a) engaged in prohibited transactions; (b) failed to discharge their duties with respect to the DSP solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the DSP, as required by Section 404(a)(1)(A) of ERISA, 29 U.S.C. §1104(A)(1)(a); and (c) failed to act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, as required by Section 404(a)(1)(B) of ERISA, 29 U.S.C. §1104(a)(1)(B).

131.    As a direct and proximate result of the Defendants repeated failures to discharge its fiduciary duties properly, the DSP and the participants and beneficiaries have suffered losses for which the Defendants are jointly and severally liable, pursuant to Section 409 of ERISA, 29 U.S.C. §1109.

## FOURTH CAUSE OF ACTION

132.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs.

133.    The Defendants' failure to remit the Required Contributions  in accordance with the CBAs is a breach of the CBAs, thereby giving rise to an action against the Defendants, jointly and severally, pursuant to Section 301(a) of the LMRA, 29 U.S.C. §185(a).

## FIFTH CAUSE OF ACTION

134.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs.

135.    WG Communications and C&I are jointly and severally liable for any contribution underpayments to the Funds and attendant damages due under Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, based on their alter ego, single employer and/or joint employer relationship.

### SIXTH CAUSE OF ACTION

136.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs.

137.    Giannini is a controlling corporate official of the Defendant Companies and knowingly committed fraud against the Joint Board by creating and orchestrating a scheme to underreport the amount of hours worked in employment covered by the CBAs.  As part of this scheme, Giannini deliberately underreported the amount of hours worked in covered employment and underpaid the amounts of Required Contributions owed.

138.    The Joint Board reasonably relied, to their detriment, on the material and false representations and omissions caused by Giannini, with the ERISA Plans paying benefits to employees of the Defendant Companies without full payment from the Defendants of the Required Contributions due.

139.    The Joint Board has been harmed by the Defendants' failure to remit Required Contributions for all hours worked in covered employment.

140.    Giannini is jointly and severally liable for any contributions due and owing pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, based on control over the Defendant Companies and his knowing participation in a scheme to underpay the Defendant Companies' Required Contributions to the Joint Board.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that the Court enter judgment against the Defendants as follows:

A.      Ordering the Defendants, jointly and severally, to submit all necessary books and records to payroll audit for the period commencing January 1, 2011;

B.      Ordering the Defendants, jointly and severally, to pay (i) any Required Contributions identified by the payroll audits;  (ii) interest on the unpaid Required Contributions, calculated through the date that judgment is entered at the rate established by the individual ERISA Plans or in accordance with Section 6621 of the Code, 26 U.S.C. §6621; (iii) liquidated damages in an amount equal to the greater of (a) interest due on unpaid and late-paid Required Contributions or (b) 20% of the unpaid and late-paid Required Contributions; and (iv) the cost of the audits;

C.      Ordering the Defendants, jointly and severally, to submit Payroll Reports and DSP Reports for any weeks for which such reports have not been submitted as of the date judgment is entered;

D.      Ordering the Defendants, jointly and severally, to remit the Required Contributions determined by the Court to be due and owing; and

E.      Ordering the Defendants, jointly and severally, to pay interest on the amount of Required Contributions found to be due and owing in paragraph D above, calculated through the date that judgment is entered at the rate established by the individual ERISA Plans or in accordance with Section 6621 of the Code, 26 U.S.C. §6621; and

F.      Ordering the Defendants, jointly and severally, to pay interest on any late-paid Required Contributions paid after the filing of the Complaint, and such further interest as

may accrue on that amount through the date payment of said interest amount is received or the date judgment is entered;

       G.     Ordering the Defendants, jointly and severally, to pay liquidated damages in an amount equal to the greater of (a) interest due on unpaid and late-paid Required Contributions or (b) 20% of the unpaid and late-paid Required Contributions; and

       H.     Ordering the Defendants, jointly and severally, to pay reasonable attorney's fees and costs of the action;

       I.     Ordering such other legal or equitable relief as the Court deems appropriate.

Dated: November 17, 2015
      New York, New York

By: _____
     David R. Hock
     Michael S. Adler
     COHEN, WEISS and SIMON LLP
     330 West 42nd Street
     New York, New York 10036
     (212) 563-4100

     Attorneys for Plaintiff